# CHARLESTON.

CALE'S ADM'R v. SHAW et al.

ADAIR et al. v. SAME.

*(GREEN, JUDGE, absent.)

Submitted Sept. 9, 1889.—Decided Nov. 18, 1889.

SEPARATE ESTATES OF MARRIED WOMEN — COMMISSIONER'S SALES.

W. purchased a lot of land in September, 1866 for $150.00 from D. M., who executed and delivered to her a deed therefor, and afterwards she sent said deed to the clerk's office by S., for the purpose of having it recorded, and said S. upon consulting an attorney, without the knowledge or consent of W., who was then a married woman but living apart from her husband, had said deed altered by inserting therein his name as grantee in the room and stead of hers and subsequently informed W., that said change was made to protect said property from her husband, should he return. She sold said property for $2,500.00; and after paying a balance owed by W., on the purchase-money, for which a vendor's lien was retained, and an amount borrowed by her from S. to make part of the cash payment thereon, a balance of $1,950.00, was left of the proceeds of said sale, which amount was received and retained by S., who told W. that he would hold the same in trust for her and purchase for her a better home, when she could hold it. Said W. and S. intermarried in the fall of 1869, and in 1875 and 1877, said W. purchased at commissioner's and tax-sale two tracts of land—one

*On account of illness.

containing 110 acres, and the other 31 acres —situate in Preston county, W. Va., where she resided; and part of the purchase-money thereof was paid by S. out of money in his hands belonging to his then wife. Said purchase was reported as made by her, and the report of sale was confirmed. At the time of said commissioner's and tax-sales and confirmation thereof no judgment-lien existed against said S.; and, so far as the pleadings show, no debts existed against him. *Held*, (1) that said land purchased by the wife of S. at said commissioner's and tax-sale could not be subjected to sale by the creditors of S. to satisfy judgments acquired and docketed after said sale and confirmation; (2) as it does not appear from the pleadings that S. owed any debts at the time said sales were made and confirmed, there was nothing to prevent said S. from paying his said wife any portion or all that he owed her on his indebtedness to her contracted before marriage; (3) as no lien existed which would in any manner bind money in the hands of S. he had as much right to pay his wife any portion of the debt he owed her, as aforesaid, as any other creditor; (4) after a commissioner's sale is confirmed, it relates back to the date of the sale, and the purchaser is considered the owner from and after that date.

*J. Brannon, W. G. Brown* and *H. C. Hyde* for appellants.

*J. B. Payne* and *P. J. Crogan* for appellees.

ENGLISH, JUDGE:

These two suits in equity were brought in the Circuit Court of Preston county in the year 1881—one in the name of Joseph Adair and Charles E. Vickery, in March, against Joseph M. Shaw, Benjamin Shaw and Joseph A. Martin for the purpose of recovering a judgment for the sum of $188.05 and costs, which one David Wheeler had obtained against said Joseph M. Shaw, Benjamin Shaw and said Joseph Adair and Charles E. Vickery, and which said Adair and Vickery claim they had been compelled to pay, and to subject their real estate to the satisfaction of the same; the other in the name of John A. Martin, administrator of Joshua H. Cale, deceased, against said Joseph M. Shaw and Benjamin Shaw individually and as late partners doing business under the name style and firm of J. M. Shaw & Bro., Mary Shaw, J. Ami Martin, Joseph Jackson and John P. Jones, late partners doing business as Joseph Jackson & Co., and others, the object of which last-named suit was to enforce the payment of certain judgments in the bill men-

tioned against the real estate of the defendants Joseph M. Shaw and Benjamin Shaw, and to set aside two deeds made to the defendant Mary Shaw, and obtain a decree for the sale of the real estate in the bill mentioned for the payment of said judgments.

On the 7th day of December, 1887, said two causes were heard together upon the report of Commissioner Hawthorne, who, by a former decree rendered therein, had been directed to ascertain and report as to the title to the lands conveyed by William G. Worley, commissioner, to the defendant Mary Shaw, and by J. Ami Martin, clerk, to said Mary Shaw, and as to the validity of the title to said lands, and as to the consideration paid for the same, and whether the moneys or any part thereof paid therefor were the moneys of the defendant Benjamin Shaw, and by whom the same was paid, and how derived; and upon the exceptions indorsed on said commissioner's report, and upon an amended bill filed by John A. F. Martin and others, and upon consideration of the pleadings, proofs and exhibits in said causes, the court held that the deed in the bill mentioned from William G. Worley, commissioner, to Mary Shaw, dated on the 20th day of January, 1879, and the deeds executed by J. Ami Martin, clerk, to Mary Shaw, dated the 20th day of April, 1880, and the 22d day of September, 1879, respectively, and the deed executed by the defendants Benjamin Shaw and Mary Shaw to William Parshall, dated the 28th day of November, 1882, were, and each of them was as to the creditors of said Benjamin Shaw, fraudulent and void, and set aside said deeds and each of them as to the creditors of said Benjamin Shaw, sustained the first and second exceptions to said commissioner's report indorsed by the creditors of J. M. Shaw & Bro., and the creditors of J. M. and Benjamin Shaw, and overruled the exceptions indorsed thereon by Caleb Boggess and Joseph M. Shaw, confirmed the report of said commissioner as to the liens existing against said lands and as to the priorities thereof, and directed a sale of said lands by a special commissioner therein named, unless said Benjamin Shaw, or some one for him, should within sixty days from that date pay to the said creditors the amount therein ascertained to be due to them, respectively, and to the

plaintiff in the case of J. H. Cales Adm'r *etc., v.* J. M. Shaw &. Bro. *et al.,* his costs thereby decreed to him.

From this decree the defendants, Benjamin Shaw and Mary Shaw, applied for and obtained this appeal; and they assign, as the first error relied on by them, that the court erred in sustaining the first and second exceptions to the report of the commissioner, Hawthorne, which exceptions are as follows : "(1) Because the land sought to be subjected to the payment of said debts and held in the name of Mary Shaw should have been reported as the real estate of Benjamin Shaw, and subject to his debts reported herein. (2) Said creditors except to the report so far as the conclusions of said commissioner as to the facts in relation to the purchase and ownership of said land. They insist that the facts proven show the purchase was made by Benjamin Shaw. And, so far as any money went into said land other than that paid by Benjamin Shaw, the same was borrowed and is unpaid; liens having been given thereon for the same by Mary Shaw. That it is not shown that Mary Shaw had any money of her own which she paid on said land."

Upon the questions raised by these exceptions, the proofs in the cause show, that said Mary Shaw was first married in 1851 ; to one Isaac Whiting, in the state of Maine. That her said husband removed from that state to Preston county, W. Va., to which place said Mary followed him, and in said county kept boarders, for some time, for the firm of Perry & Co., who were engaged in the shuck business, and then removed to Rowlesburg, where she engaged in the same business for the same parties, getting her house and fuel free, her groceries at cost, and $18.00 per month for each of the men boarded for said Perry & Co.; that while said Whiting was careless and negligent, and did not provide a living for his wife and children, yet he set up no claim to her own earnings; and when he eventually left and abandoned her, and went to the state of California, she had, by labor and economy, accumulated about $600.00 in money; and some time after her said husband abandoned her she purchased a house and lot of one Daniel Martin at Cranberry Summit, W. Va., and contracted to pay him $1,150.00 for the same— $800.00 down, and the balance on time ; that she borrowed

$200.00 from the appellant Benjamin Shaw to enable her to make the cash payment: and when said cash payment was made said Martin executed and delivered to her a deed for the same, reserving a vendor's lien for the residue; that this deed bore date on the 1st day of September, 1856, said Whiting having finally left and abandoned said Mary on the 8th day of May, 1866.

It appears that after she had received said deed she intrusted it to said Benjamin Shaw, to be carried to the clerk's office for recordation, and that said Shaw, upon consultation with a lawyer of the name of Hooton, had the deed so changed as to insert the name of Benjamin Shaw in the place of Mary Whiting, in order to protect the property from said Whiting, her husband, in case he returned, which change was made without her knowledge or consent; and afterwards said Shaw explained how and why said change was made, and told said Mary he was to hold the title to said property in his name, in trust for her. Subsequently said property was sold to one Wendall for $2,500.00 with the consent of said Mary; and the commissioner ascertains, as I think, properly, that from the fall of 1866 up to the fall of 1869, and prior to her second marriage, which took place late in the fall of 1869, the said Benjamin Shaw became indebted to the said Mary Whiting to the amount of $2,600.00 which was the *status* of accounts between said Mary and Benjamin Shaw at the time of their marriage. When he informed her of the change made in said deed, he declared his intention to hold the property in trust for her; and, being thus held, the statute of limitations would not apply to said indebtedness; and in this respect, as well as others, this case differs very materially from the case of *Bank* v. *Atkinson*, 32 W. Va. 203, (9 S. E. Rep. 175) referred to in the brief filed by counsel for appellees.

The property sought to be subjected in this case consists of a tract of 110 acres which the commissioner ascertained was purchased by said Mary Shaw in the fall of 1875 at a judicial sale in Kingwood, Preston county, W. Va., of Special Commissioner William G. Worley, and two small tracts of thirty one acres from J. Ami Martin, clerk, in 1877. The 110 acres was purchased by said Mary for the sum of

$1,312.50. At the time she consented to the sale of the house to Wendall, said Benjamin told her that he would get her a better home when she could hold it; and it appears that after returning to said Shaw the money she had borrowed from him to make the cash payment, and $350.00 still due Daniel Martin, a balance of $1,950.00 was still due her from said Benjamin, besides $275.00 for articles of furniture *etc.*, sold him, and $375.00 for her services in keeping house for him.

The purchase-money for said 110 acres of land appears to have been derived by said Mary Shaw as follows : $530.00 was realized from an insurance-policy which said Benjamin Shaw took out in the spring of 1867, and gave to her as a partial security for his indebtedness to her; $500.00 thereof was borrowed from said Benjamin Shaw from some money which he had in his hands in a fiduciary capacity, and the note of said Mary Shaw was executed therefor, and a deed of trust upon said tract of land to secure the same; and the residue was paid by her by the sale of timber from off the land, and by borrowing $87.21 from a man in Newburg. So that the purchase-money for said tract of 110 acres was largely paid from money realized upon a collateral placed in her hands by said Benjamin before said marriage, and nearly all of the residue was paid by her by creating a lien upon the land, and the sale of timber from the same.

But, if said Benjamin Shaw had paid the money for said lands directly, he had a perfect right to do so. The debt due from him to Mary Whiting existed before marriage, by reason of his having received the proceeds of the sale of her real estate, the title to which passed to her by the execution and delivery of the deed to her by Daniel Martin, and remained in her, notwithstanding the unauthorized change made in the same by the insertion of the name of Benjamin Shaw, until the same was sold and conveyed; and the proceeds went into the hands of said Benjamin Shaw, as he declared at the time, in trust for her.

At the time of said marriage, in the fall of 1869, our statute declared that "the real and personal property of any female who may hereafter marry, and which she shall own at the time of marriage, and the rents, issues, and profits

thereof, shall not be subject to the disposal of her husband, nor be liable for his debts, and shall be and continue her sole and separate property, as if she were a single woman." See Code W. Va. 1868, c. 66, p. 447, § 2. And, this being the law, the marriage of said parties would have no effect upon the rights of said Mary, with reference to her property held and owned by her previous to her marriage.

Again, the purchase of this 110-acre tract of land was made in 1875; and, although the deed was not made for the same until some time in 1879, it is held by the Court of Appeals of Virginia, in the case of *Taylor* v. *Cooper*, 10 Leigh, 317, that "after the sale is confirmed the confirmation relates back to the sale, and the purchaser is entitled to everything he would have been entitled to had the confirmation and conveyance been contemporaneous with the sale." She then was, for all purposes, the owner of said tract of 110 acres on the 7th day of October, 1875; and at that time none of the judgments reported by the commissioner had been rendered, and there is nothing in the pleadings to show that the debts existed when the land was purchased, in October, 1875; and, even if Benjamin Shaw had purchased and paid for said land, he had a perfect right to do so, so far as anything appears in the cause, and to have the same conveyed to his wife in satisfaction, or partial satisfaction, of his indebtedness to her.

As to the thirty one acres purchased at tax-sale, and at the sale of the Chidester estate, the title to said land never was in the defendant Benjamin Shaw; but the sale appears to have been made, and said Mary Shaw reported as purchaser, and the sale to her was confirmed. She, also, was the purchaser at the tax-sale; and, if said Benjamin Shaw paid any portion of the purchase-money for her, it was her money he was paying, and the creditors, by their docketed judgments, had no lien upon it, and acquired no lien upon the thirty one acres for which it was paid, as their debtor, Shaw, acquired no title of any character, legal or equitable, to said tract of land.

In this case, it appearing that the indebtedness of Benjamin Shaw to Mary Whiting was created before their marriage, and also that there was clearly a resulting trust in

favor of said Mary as to the house and lot purchased from Daniel Martin, which was paid for by Mary Whiting, and the deed taken in the name of Benjamin Shaw, without her knowledge or consent, the subsequent sale of said property, and receipt of the proceeds by said Shaw, accompanied with the declaration that he would hold them in trust for her, did not extinguish said trust as to said proceeds. Neither did their marriage affect the same, but it remained good and valid between the parties thereto. And it does not appear that at the time the property now sought to be subjected was acquired by said Mary Shaw any creditors of Benjamin Shaw existed to interpose an objection, if any could legally be made, to the said Mary being repaid in money or property what she was legally entitled to by reason of said ante-nuptial debt.

As to the deed of trust executed by Mary Shaw and Benjamin Shaw to secure the money borrowed by her from Benjamin Shaw, guardian, *etc.*, it is not regarded as material in this case whether said trust created a valid lien upon the property therein described or not. It shows that she borrowed the money from a source that could not be reached by the general creditors of said Benjamin Shaw, if any such there were.

Entertaining these views of the case we are of opinion that the court below erred in sustaining said first and second exceptions to Commissioner Hawthorn's report, and in declaring the deed from William G. Worley, commissioner, to Mary Shaw, dated the 20th day of January, 1879, and the deed to her from J. Ami Martin, clerk, dated the 20th day of April, 1880, fraudulent and void as to the creditors of said Benjamin Shaw, and in setting said deeds aside as to said creditors, and in ascertaining that any liens exist against said lands in favor of said creditors, and directing a sale of said lands to satisfy any liens in favor of said creditors so ascertained.

The decree complained of must be reversed, with costs to appellant, and the bills dismissed as to the defendant Mary Shaw, and the lands purchased by her, as aforesaid, from William G. Worley, commissioner, and J. Ami Martin, clerk.

REVERSED.