MOORE, Judge.
Howard Ross appeals from a summary judgment entered by the Madison Circuit Court (“the trial court”) in favor of Deutsche Bank National Trust Company, as trustee under the Pooling and Services Agreement Series INABS 2006-B (“the Bank”). We reverse.
Facts and Procedural History
It is undisputed that the Bank purchased certain property located in Madison County (“the property”) at a foreclosure sale on August 24, 2006, and that Ross subsequently purchased the property on May 11, 2007, at a Madison County tax sale. The issue on appeal is whether the Bank properly redeemed the property from Ross after the tax sale, pursuant to Ala.Code 1975, § 40-10-122.[1]
*681 On September 24, 2007, the Bank filed a complaint requesting that the trial court (1) declare that the Bank owned the property, (2) issue a writ of possession for the property in favor of the Bank, and (3) declare that Ross was exercising unlawful possession of the property. Ross answered the complaint on October 24, 2007. On November 20, 2007, the Bank filed a motion for a summary judgment, along with a brief; an affidavit of Cary B. Stern-berg, a vice president of the Bank; and other evidentiary materials in support of its motion. In Sternberg’s affidavit, he stated that the Bank had redeemed the property. Ross subsequently filed a response to the summary-judgment motion, along with an affidavit in which he stated that the property had not been redeemed pursuant to § 40-10-122 and that he had not received any notice regarding the property.
*682 The Bank then filed a reply to Ross’s response, along with evidentiary materials in support thereof. Specifically, the Bank attached to its reply an affidavit of Jane Dismuke, the chief accountant for the Madison County Probate Court. In her affidavit, Dismuke stated that the Bank had redeemed the property on July 27, 2007, and that she had forwarded the notice of redemption to Ross. The Bank also attached the certificate of redemption issued by the probate court and an affidavit of Patrick Tuten, local counsel for the Bank, in which Tuten stated that he had, on October 23, 2007, personally delivered a letter to Ross that stated: “Please forward your demands for the redemption of [the] property at your earliest possible convenience, being sure to include an itemized statement of the fees you are requesting.”
Ross filed an answer to the Bank’s reply and an affidavit in support thereof. In his affidavit, Ross stated that he had received the certificate of redemption, that he had received the letter from Tuten, that he had placed a list of improvements and insurance premiums for the property in the Madison County courthouse mailbox of Patrick Tuten, and that he had not received payment for the amounts he had expended on improvements and insurance premiums for the property.
After several additional proceedings not relevant to the disposition of this appeal, the trial court entered a summary judgment in favor of the Bank on July 20, 2009, stating, in pertinent part:
“A. The Court finds there are no genuine issues of material fact, and [the Bank] is entitled to judgment as a matter of law.
“B. On July 27, 2007, [the Bank] properly redeemed the property ... from a tax sale to ... Ross, pursuant to Ala.Code [1975,] § 40-10-122. [The Bank] has provided evidence that it made written demand on ... Ross on October 23, 2007[,] requesting improvement figures pursuant to Ala.Code [1975,] § 40-10-122(d), and that no response was received from Ross within the 10 days of receipt of the demand for same, a time limitation imposed by Ala. Code [1975,] § 40-10-122(d)....
[[Image here]]
“D. [The Bank] ... owns all rights, title and interest in and to the property....
[[Image here]]
“E. [The Bank] ... is entitled to a Writ of Possession/Execution granting [it] possession of the property and the Circuit Clerk shall issue the said Writ of Possession/Execution immediately.”
Ross filed a motion to vacate the summary judgment on August 18, 2009; that motion was denied by operation of law on November 16, 2009. Rule 59.1, Ala. R. Civ. P. Ross timely appealed to this court on December 23, 2009. This court subsequently transferred the case to the Alabama Supreme Court for lack of appellate jurisdiction; that court then transferred the case back to this court, pursuant to Ala.Code 1975, § 12-2-7.

Standard of Review

“A party is entitled to a summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), Ala. R. Civ. P. ‘Our standard of review in cases involving summary judgments is de novo.’ Lee v. Burdette, 715 So.2d 804, 806 (Ala.Civ.App.1998). ‘In reviewing the disposition of a motion for [a] summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact’ and whether the movant ‘is entitled to a *683 judgment as a matter of law.’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c)(3), Ala. R. Civ. P. ‘[I]f the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden ... shifts to the non-movant; ... the non-movant must show “substantial evidence” in support of his position.’ Bass v. SouthTrust Bank, 538 So.2d 794, 798 (Ala.1989). Evidence is ‘substantial’ if it is ‘of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989). Our review is further subject to the caveat that this court must review the record in a light that is most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Manners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).”
Prince v. Wal-Mart Stores, Inc., 804 So.2d 1102, 1103-04 (Ala.Civ.App.2001).

Discussion

I.
On appeal, Ross first argues that his affidavit, in which he states that he placed a list of improvements and insurance premiums for the property in the Madison County courthouse mailbox of Patrick Tuten constituted substantial evidence indicating that he responded to the Bank’s demand for improvement figures, pursuant to Ala.Code 1975, § 40-10-122(d). We note, however, that § 40-10-122(d) requires that the tax-sale purchaser respond to a demand for improvement figures within 10 days from the receipt of that demand. See Ala.Code 1975, 40-10-122(d) (“In response to written demand made pursuant to this subsection, within 10 days from the receipt of such demand, the purchaser shall furnish the proposed redemptioner with the amount claimed as the value of such permanent or preservation improvements as applicable_”). In the present case, although Ross did present evidence indicating that he had responded to the demand for improvement figures, he failed to present any evidence indicating that his response was effected within the requisite 10 days after receipt of the demand. Thus, we conclude that Ross failed to present substantial evidence indicating that he had complied with the procedure set forth in § 40-10-122(d).
II.
Ross next argues that, because § 40-10-122 does not specifically provide for forfeiture of compensation for improvements due to failure to respond to a request for improvement figures, the trial court erred in entering the summary judgment in favor of the Bank. We note, however, that Ross failed to make this argument to the trial court. Thus, we cannot address this argument. See Shiver v. Butler County Bd. of Educ., 797 So.2d 1086, 1088 (Ala.Civ.App.2000) (“Generally, a reviewing court cannot consider arguments made for the first time on appeal.”). Even so, we note that, although § 40-10-122(d) does not specifically provide that a failure to timely respond results in a forfeiture of the right to payment for improvements, the mandatory nature of the procedure set forth in that subsection implies the same.
III.
Ross’s final argument is that the payment of insurance premiums by a re-demptioner is required regardless of whether the tax-sale purchaser responded to a demand for improvement figures. Ross notes that § 40-10-122 makes no provision for a request for insurance figures or a response thereto. We agree. Section 40-10-122(c) provides that if the *684 property at issue “contains a residential structure at the time of the sale regardless of its location, the proposed redemptioner must pay to the purchaser or his or her transferee ... [a]ll insurance premiums paid or owed by the purchaser for casualty loss coverage on the residential structure with interest on the payments at 12 percent per annum.”[2] Section 40-10-122, however, makes no provision for a proposed redemptioner to demand the amount of insurance premiums paid or for the tax-sale purchaser to respond to that demand. Thus, Ross had no statutory duty under § 40-10-122 to respond to the demand by providing the amount of insurance premiums Ross had paid, whereas the Bank did have the statutory duty to reimburse Ross for the amount of insurance premiums that had been paid. As Ross points out, the Bank failed to provide any evidence indicating that it had met this requirement. Accordingly, we conclude that the trial court erred in entering a summary judgment in the Bank’s favor.

Conclusion

Based on the foregoing, we reverse the trial court’s summary judgment, and we remand this cause for further proceedings.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. At all times pertinent to this action, Ala. Code 1975, § 40-10-122, provided, in pertinent part:
“(a) In order to obtain the redemption of land from tax sales where the same has been sold to one other than the state, the party desiring to make such redemption shall deposit with the judge of probate of the county in which the land is situated the amount of money for which the lands were sold, with interest payable at the rate of 12 percent per annum from date of sale, and, on the portion of any excess bid that is less than or equal to 15 percent of the market value as established by the county board of equalization, together with the amount of all taxes which have been paid by the purchaser, which fact shall be ascertained by consulting the records in the office of the tax collector, or other tax collecting official, with interest on said payment at 12 percent per annum. If any taxes on said land have been assessed to the purchaser and have not been paid, and if said taxes are due which may be ascertained by consulting the tax collector or other tax collecting official *681 of the county, the probate judge shall also require the party desiring to redeem said land to pay the tax collector or other tax collecting official the taxes due on said lands which have not been paid by the purchaser before he or she is entitled to redeem the same. In all redemptions of land from tax sales, the party securing the redemption shall pay all costs and fees as herein provided for due to officers and a fee of $.50 to the judge of probate for his or her services in the matter of redemption. This application and payment may be executed by an on-line transaction via the Internet or other on-line provision.
[[Image here]]
(c) With respect to property which contains a residential structure at the time of the sale regardless of its location, the proposed redemptioner must pay to the purchaser or his or her transferee, in addition to any other requirements set forth in this section, the amounts set forth below:
“(1) All insurance premiums paid or owed by the purchaser for casualty loss coverage on the residential structure with interest on the payments at 12 percent per annum.
"(2) The value of all preservation improvements made on the property determined in accordance with this section with interest on the value at 12 percent per annum.
"(d) As used herein, ‘permanent improvements' shall include, but not be limited to, all repairs, improvements, and equipment attached to the property as fixtures. As used herein, 'preservation improvements' shall mean improvements made to preserve the property by properly keeping it in repair for its proper and reasonable use, having due regard for the kind and character of the property at the time of sale. The proposed redemptioner shall make written demand upon the purchaser of a statement of the value of all permanent or preservation improvements as applicable made on the property since die tax sale. In response to written demand made pursuant to this subsection, within 10 days from the receipt of such demand, die purchaser shall furnish the proposed redemptioner with the amount claimed as the value of such permanent or preservation improvements as applicable; and within 10 days after receipt of such response, the proposed redemptioner either shall accept the value so stated by the purchaser or, disagreeing therewith, shall appoint a referee to ascertain the value of such permanent or preservation improvements as applicable. The proposed re-demptioner shall in writing (i) notify the purchaser of his or her disagreement as to the value; and (ii) inform the purchaser of the name of the referee appointed by him or her. Within 10 days after the receipt of such notice, the purchaser shall appoint a referee to ascertain the value of the permanent or preservation improvements as applicable and advise the proposed re-demptioner of the name of the appointee. Within 10 days after the purchaser has appointed his or her referee, the two referees shall meet and confer upon the award to be made by them. If they cannot agree, the referees shall at once appoint an umpire, and the award by a majority of such body shall be made within 10 days after the appointment of the umpire and shall be final between the parties.”
Section 40-10-122 was amended effective September 1, 2009; however, the changes to the statute are not pertinent to the issues in this appeal.

. The Bank does not dispute that the property "conlain[ed] a residential structure at the time of the sale,” so as to make § 40-10-122(c) inapplicable. Instead, based on the fact that Ross had leased the property to tenants who resided on the property, it appears undisputed that § 40-10-122(c) is applicable to the property.